NOT RECOMMENDED FOR PUBLICATION
File Name:  15a0592n.06

No. 14-6509

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| *Plaintiff-Appellee*, | ) | Aug 19, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GERMAN CASTRO-MARTINEZ, | ) | COURT FOR THE  MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| *Defendant-Appellant.* | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH and MOORE, Circuit Judges; VAN TATENHOVE, District Judge.

SUHRHEINRICH, Circuit Judge.    Defendant-Appellant German Castro-Martinez pleaded guilty to illegally reentering the United States after removal subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2).  The district court held that his prior conviction for aggravated burglary under Tennessee Code Annotated § 39-14-403 was a "crime of violence" pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), and applied a 16-level enhancement.  Defendant challenges this ruling and the resulting sentence imposed.  We affirm.

I.

The predicate offense is based on the following event.  On October 12, 2007, police received a call from neighbors that several male Hispanics were breaking into a house next to 7528 Sawyer Brown Road.  According to the probable cause affidavit, the responding officer, Officer Taylor C Schmitt, was informed upon his arrival that the men were in the storage unit

behind the house. Schmitt reported that the door to the shed opened and one Hispanic male fled. By this time, Officer Sears arrived and chased the suspect. Schmitt went back to the shed and ordered the other men to exit the shed. Schmitt stated that "[t]he other two suspects did exit the vehicle [sic] and were taken into custody." The probable cause affidavit also stated, "The suspects also broke into the house."

On February 29, 2008, Defendant was charged in a two-count indictment in Davidson County, Tennessee. Count One charged Defendant with aggravated burglary, alleging specifically that Defendant "enter[ed] the habitation of George Tanifum and did commit or attempt to commit theft in violation of Tennessee Code Annotated § 39-14-403." Count Two charged Defendant with theft of property and alleged that he intended to deprive Tanifum of "computer equipment" and a "wallet." Defendant pleaded guilty to Count One on May 8, 2008, and Count Two was dismissed.

Subsequently, Defendant was deported to Mexico because he lacked legal immigration status, having entered the United States illegally at age 12. After that deportation and one other, Defendant entered the United States in 2009, at about age 20. He was arrested for driving without a license in December 2013, and, on February 19, 2014, he was charged with the offense of illegal reentry by an aggravated felon. On July 21, 2014, he pleaded guilty to the indictment.

Defendant's presentence report (PSR) stated that Defendant's prior state conviction for aggravated burglary was a "crime of violence" pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) and, as a result, applied a 16-level enhancement to Defendant's base offense level of 8. With a criminal history category of III, Defendant's Guidelines range was 46 to 57 months. In his response to the sentencing report, Defendant conceded that his aggravated burglary conviction was an

"aggravated felony," as defined in 8 U.S.C. § 1101(a)(43). However, he argued that his conviction was not a "crime of violence"—i.e. "burglary of a dwelling," as defined in U.S.S.G. § 2L1.2(b)(1)(A)(ii) and cmt. n.1(B)(iii). Without the 16-level enhancement, his sentencing guidelines range would have been 18 to 24 months.

Sentencing was postponed, however, pending this court's decision in *United States v. Lara*, 590 F. App'x 574 (6th Cir. 2014), which also dealt with Tenn. Code Ann. § 39-14-403. *Lara* held that the Tennessee statute was not categorically a "burglary of a dwelling" as defined in U.S.S.G. § 2L1.2(b)(1)(A)(ii) and cmt. n.1(B)(iii), because it defines "habitation" broadly, to include a storage shed behind a house. *Lara*, 590 F. App'x at 578-85.

Based upon *Lara's* holding, the United States asked the district court to apply the modified categorical approach, and argued that the "*Shepard* documents" describing Defendant's state conviction established that he had been convicted of a "burglary of a dwelling." Defendant countered that because "a shed was involved, maybe a house too, but it's not clear," the court should impose the 8-level enhancement instead of a 16-level enhancement. The district court considered the *Shepard* documents. Focusing on a statement by the state court judge to Defendant that he was charged with "aggravated burglary, *breaking into a home* with intent to commit a theft," (emphasis added), the district court concluded that the plea colloquy included an express reference that Defendant was pleading guilty to the charge of aggravated burglary into a house. Thus, Defendant's state court conviction qualified as a crime of violence and the 16-level enhancement applied. After a 3-level adjustment for acceptance of responsibility, the court found that Defendant's total offense level was 21, and with a criminal history category of III, his Guidelines range was 46 to 57 months.

Defendant requested a sentence of 18 months, which would have been within his Guidelines range if only an 8-level enhancement had been imposed. The district court stated that it had considered all of the 18 U.S.C. § 3553(a) factors, that it believed that the enhancement applied, but that it would grant a downward variance of twelve months due to Defendant's age of 18 at the time of the prior conviction. The court also stated that the prior aggravated burglary conviction was "a significant fact in sentencing, whether as an enhancement or just as a sentencing factor." The court then stated that it would impose a sentence that was no greater than necessary, given his two prior deportations. The court imposed a sentence of 34 months. The United States also asked whether the court would have imposed the same sentence based on the § 3553(a) factors if it had not decided to apply the 16-level enhancement, given the nature and circumstances of Defendant's prior conviction. The court concluded by asking if either party had any procedural or substantive objections to the sentence imposed. Neither party had any.

On appeal, Defendant argues that (1) the district court misapplied the modified categorical approach; and (2) § 39-14-403 is not a divisible statute. The United States responds that (1) Tennessee's aggravated burglary statute is divisible and that the *Shepard* documents in this case, namely the state plea colloquy, demonstrate that Defendant was convicted of burglary of a dwelling; and (2) even if the 16-level enhancement was improperly applied, Defendant's 34-month sentence should be affirmed because the district court confirmed that it would have imposed the same sentence in any event, based upon the factors set out in 18 U.S.C. § 3553(a).

II.

The applicable Sentencing Guideline, U.S.S.G. § 2L1.2, "Unlawfully Entering or Remaining in the United States," has a base offense level of 8. U.S.S.G. § 2L1.2(a). However,

if the defendant has been convicted of a "crime of violence" his offense level is increased by 16. U.S.S.G. § 2L1.2(b)(A)(ii). "[B]urglary of a dwelling" is considered a "crime of violence." U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii). A generic burglary of a dwelling is a burglary of a structure for the purpose of human habitation. *United States v. McFalls*, 592 F.3d 707, 713 (6th Cir. 2010). This court reviews de novo a district court's determination that a prior conviction constitutes a crime of violence for purposes of U.S.S.G. § 2L1.2. *United States v. Soto-Sanchez*, 623 F.3d 317, 319 (6th Cir. 2010).

Defendant was convicted of aggravated burglary under Tenn. Code Ann. § 39-14-403(a), which defines "[a]ggravated burglary" as "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." "Habitation" as defined in section 39-14-401(1)

> (A) Means any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons;
>
> (B) Includes a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant; and
>
> (C) Includes each separately secured or occupied portion of the structure or vehicle and each structure appurtenant to or connected with the structure or vehicle[.]

Section 39-14-402(a), in turn, provides in relevant part that a person commits burglary if, without consent of the property owner, he (1) "[e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault"; (2) "[r]emains concealed, with the intent to commit a felony, theft or assault in a building"; (3) "[e]nters a building and commits or attempts to commit a felony, theft or assault, or"; (4) "[e]nters any freight or passenger car, automobile, . . . with intent to commit a felony, theft or assault."

In *Lara*, this court considered whether § 39-14-403 categorically qualifies as a generic "burglary of a dwelling" within the meaning of § 2L1.2(b)(1)(A)(ii) and cmt. n. 1(B)(iii). Using the enumerated-offense approach, the *Lara* court determined that the statute encompasses more conduct than the generic definition of the enumerated-offense crime, because § 39-14-401(1), which is incorporated by reference, "expands the definition of 'habitation' to include unattached, uninhabited structures," such as a shed. *Lara*, 590 F. App'x at 583.

We further concluded that aggravated burglary under Tenn. Code Ann. § 39-14-403 is a divisible statute, because

> The state could charge a person with burglary of five types of structure: a "structure ... designed or adapted for the overnight accommodation of persons," Tenn. Code Ann. §§ 39–14–401(1)(A), 403; a "self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant," id. §§ 39–14–401(1)(B), 403; a "separately secured or occupied portion of the structure or vehicle," id. §§ 39–14–401(1)(C), 403; a "structure appurtenant to ... the structure or vehicle," id.; or a "structure ... connected with the structure or vehicle." Id. Thus, it is possible to determine which structure the defendant burglarized, and § 39–14–403 is a divisible statute.

*Id.* at 585. We also noted that if a statute is divisible, the modified categorical approach permits "the court to examine certain documents to determine which statutory phrase was the basis for the conviction." *Id.* (internal quotation marks and citation omitted). However, because the government had failed to develop its argument in favor of a remand to apply the modified categorical approach, the *Lara* court remanded for the limited purpose of resentencing without a crime of violence enhancement under § 2L1.2(b)(1)(A)(ii). *Id.* at 586-87.

Defendant makes two arguments on appeal. First, he argues that, under the modified categorical approach, the plea colloquy failed to show that his conviction necessarily rested on

the entry of a house rather than a shed. Second, he contends that the district court erred by treating Tennessee's aggravated burglary statute as divisible in the first place.

We address the second issue first. If Defendant is correct, we would be obligated to reverse, because the modified categorical approach cannot be applied to an indivisible statute, *Descamps v. United States*, 133 S. Ct. 2276, 2282 (2013). However, since *Descamps*, this court has held that both § 39-14-402 (burglary) and § 39-14-403 (aggravated burglary) are divisible statutes. *See United States v. Moore*, 578 F. App'x 550, 553 (6th Cir. 2014) (§ 39-14-402), and *Lara*, 590 F. App'x at 585 (§ 39-14-403). This court recently confirmed in a published decision *Lara's* holding that a conviction under § 39-14-403 is divisible and subject to a modified categorical analysis under *Shepard v. United States*, 544 U.S. 13, 16, 26 (2005). *See United States v. Ozier*, -- F.3d --, No. 14-6439, 2015 WL 4636669, at *2-6 (6th Cir. Aug. 5, 2013).

As *Lara* holds, the statute allows the state to charge a person with burglary of five types of structures. *Lara*, 590 F. App'x at 585. In other words, the statutory language defining "habitation" clearly "sets out one or more elements of the offense in the alternative." *Descamps*, 133 S. Ct. at 2281. *Cf. Nijhawan v. Holder*, 557 U.S. 29, 35 (2009) (treating a Massachusetts statute prohibiting "Breaking and Entering at Night" in any of four alternative places—a "building, ship, vessel, or vehicle"—as divisible, and explaining that a court must determine which crime formed the basis of the conviction); *United States v. Walker*, 599 F. App'x 582, 583 (6th Cir. 2015) (rejecting the defendant's argument that Kentucky's third-degree burglary statute was not divisible because its definition of "building" encompasses "any structure, vehicle, watercraft or aircraft" where people live or assemble and thus "sets out an 'element of the offense in the alternative'" (quoting *Descamps*, 133 S. Ct. at 2281)). Thus, under *Descamps*, *Lara*, and *Ozier*, the district court did not err in *applying* the modified categorical approach to

7

determine if the crime of conviction here meets the definition of the generic offense of burglary of a dwelling. *See also McFalls*, 592 F.3d at 712-16 (ordering that remand was appropriate to allow the district court to consider whether any *Shepard* documents established that the defendant's prior conviction under South Carolina's burglary statute, which also broadly defined structure to include sheds within two hundred yards from a residence, actually met the generic definition of dwelling under U.S.S.G. § 4B1.1).

We now turn to Defendant's first argument—that the district court misapplied the modified categorical approach. In applying the "crime of violence" enhancement, we may "consult a limited class of documents" in order to determined which alternative element "formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct. at 2281. We may "compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id*. The documents include the "charging document, written plea agreement, transcript of plea colloquy," jury instructions, and "any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16, 26.

The United States contends that the *Shepard* documents—the state indictment, judgment, and Defendant's plea colloquy—demonstrate by a preponderance of the evidence that the crime of conviction was, in fact, "burglary of a structure used for the purpose of human habitation," and therefore the conviction was one of "burglary of a dwelling," warranting the 16-level enhancement.

The state court indictment does not specify whether Defendant entered the house or the shed, but simply states that Defendant did "enter the habitation of George Tanifum and did commit or attempt to commit theft in violation of Tennessee Code Annotated § 39-14-403."

8

However, at the state plea colloquy, the state court judge informed Defendant that "You are here charged with aggravated burglary, *breaking into a home* with intent to commit a theft. That charge could carry a sentence of from 3 to 15 years in jail. Do you understand that charge against you?" (Emphasis added.) Defendant replied, "Yes." The state court did not state that Defendant was charged with breaking into a "structure . . . designed or adapted for the overnight accommodation of persons," the precise language of § 39-14-401(1)(A). It is true that some definitions of "home" would suggest that the district court's use of "home" essentially means the same thing.[1] However, other definitions of "home" could encompass a "shed."[2]

However, the statement of facts at the state plea hearing, in conjunction with the state court's statement that Defendant was charged with breaking into a home, confirms that Defendant was convicted of burglarizing a dwelling. The state judge asked defense counsel if "it [would be] satisfactory [if] the State give the Court a factual basis for the plea." Defense counsel assented. The state prosecutor explained that a trial would have shown that (1) neighbors observed three men breaking into a neighbor's house; (2) when Officer Schmitts went to the back of the house, he saw one of the suspects emerge from the house and flee; (3) Defendant fled down a treeline towards Charlotte Pike; and (4) Officer Schmitts ordered the other two suspects to exit the storage shed.[3] The state trial judge then asked Defendant directly if the prosecutor's

---

[1] "Home" is defined as "one's place of residence: DOMICILE"; "HOUSE." Merriam-Webster Dictionary, www-merriam-webster.com/dictionary/home. "Residence in turn is defined as "a building used as a home: DWELLING." Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/residence.

[2] Merriam-Webseter Unabridged Dictionary defines "home" as "the house *and grounds with their appurtenances* habitually occupied by a family." Merriam-Webster Dictionary, http://unabridged.merriam-webster.com/unabridged/home (emphasis added).

[3] The prosecutor's statement of facts varies from the probable cause affidavit in one significant respect: the affidavit states that Defendant fled from the shed. Nonetheless, Defendant did not assent to this version of the facts. Rather, he assented to the prosecutor's description that he fled from the house, after he agreed with the state trial judge that he was charged with breaking into a home. We have held that probable cause affidavits, standing alone, are not documents we can examine under *Shepard*. *United States v. Rede-Mendez*, 680 F.3d 552, 559 (6th Cir. 2012) ("[A] statement of probable cause is a gateway step in the criminal process that does not establish what acts were necessarily admitted by a later guilty plea.") (internal quotation marks omitted). *Compare United States v.*

9

statement of the facts was "true and correct. Defendant replied, "Yes." Neither Defendant nor his attorney stated that Defendant had been in the shed, let alone only the shed. Defendant contends that the court erred in considering these facts, yet he asks us to consider those same facts as supporting his argument that he could have pleaded guilty to burglarizing the shed. He further argues that the plea colloquy's factual basis is inconclusive because it does not necessarily exclude that his plea was accepted "upon his admissions regarding the shed." However, the statement of facts did not indicate that Defendant had "entered" the shed. Rather, Defendant admitted to the fact that he "entered" the victim's home before the officers arrived on the scene, fled from the home, and that the two other suspects were found in the shed. Defendant made no admissions regarding the shed beyond that a wallet of one of the victims and the other two suspects were found in the shed after he fled from inside the house. Thus, the plea colloquy demonstrates that Defendant had been charged with illegally entering a "habitation," here a structure "designed or adapted for the overnight accommodation of persons" and had in fact entered such a structure.

Defendant argues that *Descamps* compels the rule that a plea colloquy used to analyze a conviction under a divisible statute must negate all possible statutory alternatives to a conviction for a generic offense. *Descamps* does not stand for this proposition. *See Descamps*; 133 S. Ct. at 2281 ("This case presents the question whether sentencing courts may also consult those additional documents when a defendant was convicted under an 'indivisible' statute."); *United States v. Amos*, 604 F. App'x 418, 423 (6th Cir. 2015) (stating that "the issue in *Descamps* was

---

*Amos,* 496 F. App'x 517, 523-26 (6th Cir. 2012) (holding that probable cause affidavit qualified as a *Shepard* document where the defendant stipulated to its facts during the state plea colloquy and remanding for resentencing), *cert. denied*, 133 S. Ct. 14878 (2013). *See also United States v. Amos*, 604 F. App'x 418, 420, 423-24 (6th Cir. 2015) (upon remand, holding that undisputed facts in the probable cause affidavit established that the defendant's prior state conviction for aggravated assault qualified as a "violent felony" under the Armed Career Criminal Act), *petition for cert. filed*, (June 9, 2015) (No. 14-10193).

whether the lower courts applied the proper test when determining that a burglary conviction under an indivisible statute . . . was a 'violent felony' under the ACCA"). *United States v. Marcia-Acosta*, 780 F.3d 1244 (9th Cir. 2015), is also inapposite. In that case, the parties agreed the defendant was convicted of violating A.R.S. § 13–1203(A)(1), which prohibits "intentionally, knowingly or recklessly causing any physical injury." The generic crime of aggravated assault requires a *mens rea* "of at least recklessness under circumstances manifesting extreme indifference to the value of human life." *Id.* at 1249 (internal quotation marks omitted). Thus, the statute of conviction, A.R.S. § 13-1203(A)(1), encompassed conduct beyond the generic crime because it can be committed with a *mens rea* of ordinary recklessness. *Id.* Because the defendant waived any argument that A.R.S. § 13–1203(A)(1) is not divisible, the Ninth Circuit analyzed *subsection* (A)(1) under the modified categorical approach. *Id.* at 1250–51.[4] The court noted that the charging document and plea agreement "merely restat[ed] the disjunctively phrased list of *mens rea* elements in the cross-referenced statute" and "shed no light" on whether the defendant actually pleaded guilty to the generic crime. *Id.* at 1252. Thus, the only support for the district court's determination that the defendant's prior conviction was a crime of violence was the defense attorney's statement that the defendant acted intentionally, which was extraneous to the conviction. *Id.* at 1252-53. The Ninth Circuit then held that the defense attorney's statement did not necessarily exclude the possibility that the defendant had pleaded guilty to conduct that was less than intentional. As the Ninth Circuit explained, "the mens rea

---

[4] Under Arizona law, assault is committed by:

1. Intentionally, knowingly or recklessly causing any physical injury to another person; or

2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Ariz.Rev.Stat. § 13–1203(A).

elements in this case are nested. That is, they are inherently *not* mutually exclusive, as an assault can be reckless, knowing, *and* intentional. A factual-basis admission as to one mental state thus does not negate the possibility of conviction under another." *Id.* at 1255 n.10. Under the Ninth Circuit's rule that a defendant must negate the possibility that he was convicted under any elements of a divisible statute that are not generic crimes of violence, the *Shepard* documents here *do* negate the possibility that Castro-Martinez pleaded guilty to anything other than the generic crime of burglary of a dwelling. As discussed previously, the factual basis of his plea suggested that he *only* entered the house; it nowhere mentions that he entered the shed. Unlike in *Marcia-Acosta*, where "intentional" could encompass ordinary recklessness, there is no way in which "house" encompasses "shed." In sum, Defendant necessarily admitted that he violated § 39-14-401(1)(A) and not -401(1)(C).

The United States has met its burden here of proving by a preponderance of the evidence that Defendant was convicted of a "burglary of a dwelling" and thus the 16-level enhancement was properly applied. Given this conclusion, we need not address the United States' alternative arguments.

**III.**

For the foregoing reasons, the judgment of the district court is AFFIRMED.